IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AHMED IBRAHIM MAHMOUD, | * |
| Plaintiff, | * |
| vs. | *   Case No.   24 CV 384 |
| BOARD OF REGENTS of the UNIVERSITY of WISCONSIN SYSTEM and DENEEN WELLIK, in her individual and official capacities, | *   * |
| Defendants. | * |

# COMPLAINT

Plaintiff Ahmed I. Mahmoud, by his Attorney A. Steven Porter, for and as his Complaint against the above-named defendants, Board of Regents of University of Wisconsin System and Deneen Wellik, alleges, states, avers and shows the Court as follows:

## JURISDICTION AND VENUE

1. This is an action against defendant Board of Regents of University of Wisconsin System to secure protection and redress deprivation of rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, [hereinafter, "Title VII"], which provides legal, declaratory, injunctive and other equitable relief to redress, *inter alia*, unlawful discrimination in employment based upon religion and national origin. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202. Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a(a)(1)and (b). This Court is vested with jurisdiction over

1

plaintiff's claims brought under Title VII pursuant to § 706(f)(1) and 3 of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

2.  This is an action, pursuant to 42 U.S.C. §§ 1983 and 1981 and 28 U.S.C. §§ 2201 and 2202, against defendant Deneen Wellik for legal, equitable and declaratory relief and to secure protection and redress deprivations, under color of State law, of rights secured by the Fourteenth Amendment to the United States Constitution and the laws of the United States. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

3.  This Court also has supplemental jurisdiction under 28 U.S.C. §1367, for a breach of contract claim under state law.

4.  Venue of this action is vested in this Court under § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3) and pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) under 28 U.S.C. § 1391(b).

5.  The unlawful employment practices alleged herein were committed in the City of Madison, Dane County, in the Western Judicial District of the State of Wisconsin. Defendant Board of Regents of University of Wisconsin System maintains its principal place of business in Madison, Dane County, Wisconsin, in the Western District of Wisconsin. Defendant Wellik maintains her residence in the City of Verona, Dane County, Wisconsin, in the Western District of Wisconsin.

6.  All conditions precedent to the institution of this lawsuit have been fulfilled: Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the commission of the unfair employment practices alleged; plaintiff received a Notice of Right to Sue letter on March 14, 2024.

**PARTIES**

7. Plaintiff Ahmed Ibrahim Mahmoud ("Dr. Mahmoud") is an adult individual who resides in Middleton, Dane County, in the Western District of Wisconsin. At all times pertinent and material to this Complaint, Dr. Mahmoud was employed by defendant Board of Regents of the University of Wisconsin as a professor in the School of Medicine and Public Health, Department of Cell and Regenerative Biology.

8. Defendant Board of Regents of the University of Wisconsin ("Board of Regents") is an agency of the State of Wisconsin with principal offices located at 1860 Van Hise Hall, 1220 Linden Drive, Madison, Dane County, Wisconsin 53706, in the Western District of the State of Wisconsin. The Board of Regents of the University of Wisconsin is a proper party defendant in that its sovereign immunity has been expressly abrogated pursuant to Title VII of the Civil Rights Act of 1964.

9. Defendant Deneen Wellik is an adult individual who resides at 3905 Nicolet Cir., Verona, Dane County, Wisconsin 53593, in the Western District of Wisconsin. At all times pertinent and material to this Complaint, Wellik was employed by defendant Board of Regents of University of Wisconsin System as a professor in the School of Medicine and Public Health Department of Cell and Regenerative Biology and served as the Chair of that department. At all times pertinent and material to this Complaint, defendant Wellik acted in the course and scope of her employment. Plaintiff is suing defendant Wellik in her individual and official capacities.

10. The actions of defendants as alleged herein were taken under color of the statutes, ordinances, regulations, customs and usages of the State of Wisconsin.

### ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

11. Dr. Mahmoud was hired by the University in August, 2017.

12. Dr. Mahmoud is Muslim, Arab and of Egyptian origin.

13. Dr. Mahmoud held the job title of Assistant Professor in the School of Medicine and Public Health, Department of Cell and Regenerative Biology (the "Department"), at the University.

14. Dr. Mahmoud was a tenure-track Assistant Professor in the Department.

15. Dr. Mahmoud was qualified for his job at the University.

16. Dr. Mahmoud performed his job at the University competently, loyally and up to his employer's reasonable expectations.

17. Throughout his employment, Dr. Mahmoud has consistently received outstanding teaching evaluations.

18. Dr. Mahmoud has made substantial service contributions to the university community.

19. Dr. Mahmoud has conducted impactful research and was awarded WARF's innovation award for the most impactful and innovative research in the university in 2023.

20. Dr. Mahmoud was awarded the most prestigious award in the university, the Vilas award, in 2023.

21. Dr. Mahmoud provided significant mentorship to students, graduating three Ph.D. students under his mentorship.

22. Dr. Mahmoud always received excellent yearly reviews from his mentoring committee and addressed every comment they pointed.

23. Deneen Wellik is white and not of Arab or Middle Eastern origin or ancestry. She is not a Muslim. She became chair of the Department of Cell and Regenerative Biology in around 2019, almost two years after Mahmoud had joined the Department.

24. As Department Chair, Wellik adopted and signed off on Dr. Mahmoud's yearly reviews.

25. During Mahmoud's employment, Wellik, by word and by deed, discriminated against him because of his race, religion and national origin.

26. Wellik's actions as Chair included singling Mahmoud out for direct intimidation and microaggressions because of his race, national origin and religion. For example, Wellik, on more than one occasion during the time Mahmoud was being considered for tenure, communicated false statements disparaging Mahmoud's work ethic to several faulty members inside and outside the department. Wellik did not do this with regard to non-Muslim, non-Arab, non-Muslim faculty members.

27. Wellik emailed Mahmoud's mentoring committee disparaging and discrediting Mahmoud's work ethic, even while lauding his research, teaching, and service efforts.

28. Wellik treated non-Muslim, non-Arab and non-Middle Eastern assistant professors who were less qualified than Mahmoud, for example, Junsu Kang, more favorably.

29. Junsu Kang started as an assistant professor in the same department around the same month as Mahmoud.

30. At the time the Department was evaluating both Mahmoud and Junsu Kang for tenure, Kang had a fewer publications than Mahmoud, his publications were less impactful in that they were published in much less impactful journals than were Mahmoud's, Kang garnered lower citation numbers than Mahmoud, Kang received none of the awards that Mahmoud received, and Kang did not graduate any Ph.D. students, though Mahmoud did.

31. Kang's teaching performance was comparable to Mahmoud's, but Kang had performed significantly less creditable service than Mahmoud.

32. The Department's Executive Committee ("E.C.") advanced Junsu Kang to a tenured position, but declined to grant tenure to Mahmoud.

33. Multiple members of the EC have informed Mahmoud that the department chair, Wellik, engaged in disparaging and discriminatory actions against him during the voting sessions for tenure consideration that she did not engage in Kang's voting sessions.

34. For example, during the voting meeting on Mahmoud's tenure renewal, Wellik spearheaded a campaign to spread falsehoods about Mahmoud's work ethic.

35. These allegations made by Wellik were baseless and were intended to unfairly influence the votes of the EC members.

36. Several members of the EC members were not acquainted with Mahmoud through firsthand experience or connection because they were located on different floors or different buildings from Mahmoud and had very limited interaction with Mahmoud.

37. Several members of the EC indicated that the Wellik's misrepresentation of Mahmoud's work ethic and professional conduct significantly impacted the votes against him.

38. Wellik also singled Mahmoud out for exclusion from a department-wide email announcing a meeting with an invited speaker—a meeting pertinent to his role and to which his contribution would have been relevant and valuable.

39. This exclusion is part of a broader pattern of behavior by Wellik aimed at undermining and marginalizing Mahmoud within the department.

40. In some instances, Wellik as Chair, while acknowledging others' professional achievements in faculty meetings, failed to likewise acknowledge Mahmoud's similar professional achievements. Wellik did this as a deliberate tactic to disparage and intimidate Mahmoud and to denigrate his professional standing and emotional well-being.

41. Without explanation or justification, Wellik, as Chair, prevented the reallocation of grant funds from Dr. Youngsook Lee's fund to Mahmoud's lab, despite prior agreements to reallocate the funds to Mahmoud.

42. On September 6, 2023, the Chair, in violation of Faculty Policies and Procedures 7.07, misrepresented a vote in the EC to request external letters as a vote on Mahmoud's tenure.

43. This misrepresentation violated the due process rights due Mahmoud under the Faculty Policies and Procedures.

44. The EC's vote on September 6, 2023, against requesting external letters regarding Mahmoud was 8-7 with one abstention. Wellik cast the deciding vote.

45. On October 4, 2023, Wellik, as Chair, further violated Mahmoud's rights of due process under the University's Faculty Policies and Procedures, by ignoring Mahmoud's request for an open tenure hearing, a right that the University guarantees to assistant professors.

46. On November 19, 2023, the Wellik, as Chair, emailed a reconsideration vote result of 8-6 with one abstention.

47. On or about December 4, 2023, defendants informed Mahmoud that he was to be terminated from his employment. Even though defendants knew Mahmoud contended he had been the victim of discrimination, a prompt investigation was not conducted.

48. Defendants discriminatorily applied their policies and, indeed, did not follow the University of Wisconsin's own policies with regard to tenure decisions as contained in its own rules and Handbooks, which, as a matter of law, are part of plaintiff's contractual relationship with defendants.

49. Following the non-renewal notice, Mahmoud promptly reached out to the University's Human Resources department to raise his concerns about the discriminatory nature of the decision and the procedural lapses in handling his tenure renewal process.

50. Despite providing detailed evidence and documentation supporting his claims, the HR department disregarded his concerns and dismissed them without a thorough investigation.

51. Dr. Mahmoud also contacted the Office of the Provost to address the unfair treatment he experienced during the tenure review process.

52. The Provost's office failed to take appropriate action, dismissing Dr. Mahmoud's concerns and not providing any justification for the decision.

53. Dr. Mahmoud brought his concerns to the Chancellor's Office, outlining the violations of his rights and the apparent discrimination in the tenure decision.

54. The Chancellor's Office did not respond substantively to Dr. Mahmoud's grievances, effectively dismissing his claims without a proper review.

55. Dr. Mahmoud then approached the university's Office of Compliance, detailing the procedural lapses and the biased influence of the department chair.

56. The Office of Compliance failed to conduct a fair and impartial investigation into Dr. Mahmoud's complaints, ultimately disregarding his concerns.

57. Additionally, Dr. Mahmoud sought assistance from the University's Legal Department, presenting his case of discrimination and the mishandling of his tenure review.

58. The Legal Department did not provide any support or take meaningful steps to address the violations of Dr. Mahmoud's rights, dismissing his concerns outright.

59. Mahmoud appealed the Department EC's non-renewal decision to the Committee for Faculty Rights and Responsibilities ("CFRR") which conducted an independent review of Dr. Mahmoud's tenure case.

60. In response to requests from the CFRR for additional information, Wellik admitted that she had had an agenda hostile to Mahmoud that she did not share with all the members of the EC.

61. Wellik admitted that she engaged with several EC members in private conversations concerning plaintiff in which she improperly discussed considerations concerning Mahmoud that were unrelated to the established and objective criteria to be used for tenure evaluation and which were not openly discussed within the EC.

62. Wellik admitted that she had fabricated considerations that she presented to the EC during the vote on Mahmoud's tenure to skew their votes. Wellik did this to cover up and further her discriminatory intent.

63. Additionally, Wellik admitted violating the UW's procedures against secret ballots in the tenure process.

64. The use of secret ballots is a violation of the transparency rules and procedures set by the University for casting votes in tenure processes.

65. After reviewing all evidence presented, the CFRR voted 8-0 with 1 abstention to find that the EC had violated UWS 3.08(1) and had "plausibly materially prejudiced the consideration of Dr. Mahmoud's record" in the tenure process.

66. The CFRR found that in the EC voting process on tenure, "Dr. Mahmoud was not afforded the due process rights found in Faculty Policies and Procedures in regard to this decision."

67. Additionally, the CFRR found that the EC's nonrenewal decision "was based to a significant degree upon impermissible factors and improper procedure with material prejudice to Dr. Mahmoud."

68. Based upon its findings, the CFFR requested that the University Committee, after appropriate consultation, appoint an ad hoc de novo review committee to evaluate Dr. Mahmoud's record.

69. Following the CFRR decision, Mahmoud reached out again to the HR, Provost, Chancellor, sharing the violations and prejudices that the CFRR reported. However, his complaint was dismissed and ignored again.

70. There is ample evidence of suspicious behavior and circumstances surrounding Mahmoud's treatment and non-renewal, supporting his claim of discrimination.

**PLAINTIFF'S FIRST CAUSE OF ACTION AGAINST DEFENDANT BOARD OF REGENTS PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED.**

71. Plaintiff realleges each of the preceding paragraphs as though set forth herein.

72. Wellik's and the EC's treatment of plaintiff less favorably than similarly situated tenure candidates who were not Muslim or of Egyptian national origin as alleged in this Complaint, including but not limited to terminating plaintiff's employment, denying plaintiff tenure, perpetrating microaggressions against him, making false statements regarding his work ethic, treating him with condescending and demeaning behavior, refusing to recognize his achievements in the department, dismissing his grievances and complaints, defendant Board of Regents unlawfully discriminated against plaintiff because of his religion and national origin, in violation of Title VII.

73. Defendants' conduct, as described above, caused plaintiff to suffer substantial damages including loss of his employment, loss of income, loss of the ability to recruit students to work in his lab, loss of grants and other career opportunities, loss of reputation, emotional distress, physical and psychological injuries and other substantial injuries that will continue into the foreseeable future.

## PLAINTIFF'S SECOND CAUSE OF ACTION AGAINST DEFENDANT WELLIK PURSUANT TO 42 U.S.C. §§ 1981 AND 1983

74. Plaintiff realleges each of the preceding paragraphs as though set forth herein.

75. By engaging in the conduct described in the preceding paragraphs, including but not limited to terminating plaintiff's employment, treating plaintiff less favorably than similarly situated non-Muslim colleagues with respect to tenure advancement, microaggression, making false statements disparaging his work ethic, treating him with condescending and demeaning behavior and refusing to recognize his achievements in the department, dismissing his grievance and complaints, defendant Wellik deprived plaintiff of his right to contract free from discrimination based upon his race in violation of 42 U.S.C. § 1981, and because of his race and religion deprived him of his right to the Equal Protection of Law as guaranteed by the Fourteenth Amendment to the United States Constitution. Wellik is therefore liable to plaintiff under 42 U.S.C. §§ 1981 and 1983.

76. Defendants' conduct, as described above, caused plaintiff to suffer substantial injury and damages including loss of his employment, loss of the ability to recruit students to work in his lab, hence, loss of grants and other career opportunities, loss of reputation, emotional

distress, physical and psychological injuries and other substantial injuries that will continue into the future.

77. Defendant Wellik' conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights.

78. As a direct, foreseeable and proximate result of defendant Wellik' unlawful actions as alleged in this Complaint, plaintiff suffered injuries and damages in the form of financial loss, emotional distress, loss of reputation, humiliation, and other injuries which are continuing into the foreseeable future.

## PLAINTIFF'S CAUSE OF ACTION UNDER BREACH OF CONTRACT

79. For the third cause of action against defendants, plaintiff realleges each of the preceding paragraphs as though set forth herein.

80. By engaging in the conduct described in the preceding paragraphs, including but not limited to treating plaintiff less favorably than similarly situated non-muslim colleagues with respect to tenure advancement, microaggression, promoting false statements regarding Dr. Mahmoud's work ethics, condescending and demeaning behavior and refusing to recognize his achievements in the department, dismissing his grievance and complaints, the Chair and the Board, acting through its managerial agents and employees, did not follow their own policies as contained in employer's own Handbooks, which, as a matter of law, are part of Plaintiff's contractual relationship with defendants.

81. Defendants' conduct, as described above, caused plaintiff to suffer substantial damages including terminating his employment, loss of the ability to recruit students to work in his lab, hence, loss of grants and other career opportunities, loss of reputation, emotional distress,

12

physical and psychological injuries and other substantial injuries that will continue into the future.

82. Defendants' conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of plaintiff's federally protected rights, thereby entitling plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays this Court enter Judgement against each named defendant on each of plaintiff's causes of action and award plaintiff the following relief:

A. Order defendants to pay to plaintiff an amount sufficient to compensate him for his lost wages, lost employment benefits and pay increases proximately caused by defendants' violation of plaintiff's rights, plus interest at an appropriate rate.

B. Order defendants to pay to plaintiff an amount sufficient to compensate him for his lost future earnings and lost earning capacity proximately caused by defendants' violation of plaintiff's rights.

C. Order defendants to pay to plaintiff an amount sufficient to compensate him for his past and future emotional distress, pain and suffering, humiliation and loss of personal and professional reputation proximately caused by defendants' violation of plaintiff's rights.

D. Order defendant Wellik to pay plaintiff an amount sufficient to punish defendant Wellik and to deter defendant Wellik and others similarly situated and inclined from such willful, wanton and reckless disregard of rights.

E. Order defendants to reimburse plaintiff for his costs, disbursements and attorney's fees reasonably incurred in this action.

F. Order such other and further relief as the Court deems just and reasonable under the circumstances.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF SIX QUALIFIED PERSONS.**

Dated this 10th day of June, 2024.

                                                        /s/ A. Steven Porter
                                                           Attorney A. Steven Porter
                                                           State Bar No. 01000195
                                                           Attorney for Plaintiff
                                                           Ahmed I. Mahmoud

P.O. Box 7093
Madison, Wisconsin 53707
(608) 262-2285
(608) 819-6466 (fax)
asp5949@gmail.com